UNITED STATES v. BURTON.

(District Court, E. D. Missouri, E. D.   February 16, 1904.)

1. POST OFFICE—FRAUD ORDERS—POSTMASTER GENERAL—JURISDICTION—PLEADINGS.

Rev. St. 3929 [U. S. Comp. St. 1901, p. 2686], provides that the Postmaster General, on evidence satisfactory to him that any person "is engaged" in conducting any scheme or device for obtaining money through the mails by means of false or fraudulent pretenses, may instruct postmasters to return mail addressed to such persons, marked with the word "Fraudulent," and section 5480 [U. S. Comp. St. 1901, p. 3696] declares that if any person, having devised or intended to devise any scheme or artifice to defraud, etc., deposits any letter or paper in the post office for the furtherance of such scheme, he shall be guilty of an offense. Held, that an averment in the indictment that the matter pending before the Post-Office Department was whether a corporation had violated section 5480 did not show want of jurisdiction in the Postmaster General to hear and determine whether the corporation should be denied the use of the mail service, such averment being evidential only of the ultimate jurisdictional fact whether the corporation was then fraudulently using the mail. Held, further, that such averment, if faulty, was cured by the later averment that the inquiry was "to the end and for the purpose" of enabling the Postmaster General to ascertain, find, and determine whether he should exercise the power conferred upon him by section 3929, and forbid the use of the mails to the corporation.

2. CRIMINAL LAW—SENATORS—BRIBERY—INDICTMENT—SURPLUSAGE.

Where an indictment in a prosecution of a United States senator for receiving pay for services rendered to a client before the Post-Office De-

partment, in violation of Rev. St. § 1782 [U. S. Comp. St. 1901, p. 1212], charged that accused rendered services before such department; that he received compensation therefor; that the United States was interested in the matter in relation to which the services were rendered; and specifically described the services and compensation, and alleged the time it was received—it was sufficient, and all other averments tending more specifically to describe the nature of the matter in process of investigation was surplusage.

3. SAME—JURISDICTION OF POSTMASTER GENERAL.

Where the Postmaster General had jurisdiction, in the abstract, of a proceeding to determine whether a certain corporation should be longer permitted to use the mails, and whether a "fraud order" should be issued against it, such jurisdiction was sufficient for the purposes of a prosecution of a United States senator for taking compensation from such corporation for services rendered in representing it in endeavoring to induce the Postmaster General to render a decision favorable to the corporation in such proceeding, in violation of Rev. St. U. S. § 1782 [U. S. Comp. St. 1901, p. 1212].

4. SAME—STATUTES—CONSTRUCTION.

An inquiry authorized by Rev. St. § 3929 [U. S. Comp. St. 1901, p. 2686], to be prosecuted by the Post-Office Department for the purpose of determining whether a corporation is engaged in conducting a fraudulent scheme or device by means of the post-office establishment, is "a matter or thing" concerning which a senator of the United States is precluded from rendering services for a pecuniary compensation by Rev. St. § 1782 [U. S. Comp. St. 1901, p. 1212].

5. SAME—INTEREST.

An inquiry by the Post-Office Department for the purpose of determining whether a corporation has been guilty of a fraudulent use of the mails, and whether a fraud order shall be issued against it, is a proceeding in which the United States is "interested," within Rev. St. U. S. § 1782 [U. S. Comp. St. 1901, p. 1212], prohibiting a United States senator from receiving compensation for services rendered by him to any person or any bureau of the United States in relation to a matter in which the United States is interested.

On Demurrer to Indictment.

D. P. Dyer, U. S. Atty.
Chester H. Krum and F. W. Lehman, for accused.

ADAMS, District Judge. The offense charged in the indictment is denounced by section 1782 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 1212], and, stripped of verbiage, is that the accused, a senator of the United States, received a pecuniary compensation from the Rialto Grain & Securities Company for services rendered by him to that company in a matter pending before the Post-Office Department. The matter alleged to have been so pending is whether the securities company had so violated section 5480, Rev. St. [U. S. Comp. St. 1901, p. 3696], by devising a scheme to defraud, contemplating the use of the United States mails, as to require the Postmaster General to forbid the use of the mails to the securities company, and to direct the Postmaster at St. Louis to return all letters coming to that post office, addressed to the securities company, to the writers thereof with the word "Fraudulent" stamped thereon, and to make an order to that effect.

A demurrer has been interposed to the indictment on the grounds: First. That the Postmaster General had no authority, on the facts

stated in the indictment, to make the order forbidding the use of the mails to the securities company. Second. That the inquiry charged to have been pending before the Post-Office Department was not such an inquiry as falls within the comprehension of section 1782, and Third. No inquiry or "matter or thing" in which the United States was interested, within the purview of section 1782, was pending before the Post-Office Department.

Section 3929, Rev. St. [U. S. Comp. St. 1901, p. 2686], provides, in effect, that the Postmaster General may, upon evidence satisfactory to him that any person is engaged in conducting any scheme or device for obtaining money through the mails by means of false or fraudulent pretenses, instruct postmasters at any post office at which letters may arrive directed to any such person to return all such letters to the postmaster at the offices at which they were originally mailed, with the word "Fraudulent" plainly written or stamped upon the outside of such letters. The indictment charges that the matter pending before the Post-Office Department was whether the securities company had violated the provisions of section 5480, Rev. St., which denounces the use of the mails for executing schemes to defraud as a crime, when, according to the contention of counsel for the accused, it should have charged that it was then so violating those provisions. The argument is that the Postmaster General had no jurisdiction to issue the so-called "fraud order," or stop the mail of the securities company, except on evidence satisfactory to him that the company was then conducting a fraudulent scheme, and that the averment that the company had so conducted such a scheme is not enough. I am not impressed with the importance of this criticism. Section 5480, Rev. St., to which section 3929, Rev. St., manifestly refers, so far as the fraudulent scheme for obtaining money through the mails there referred to is concerned, contemplates an executed transaction. No indictment would lie unless the offense had been completed by the actual deposit of some letter in furtherance of the fraudulent scheme in the post office. Such offense actually committed once, and, a fortiori, many times, would be strong evidence that the offender was actually engaged in conducting business fraudulently, within the meaning of section 3929. But, waiving this view, it must be observed that the gist of the offense charged against the accused is that he unlawfully received compensation for services rendered by him before the Post-Office Department in relation to a matter in which the United States was interested.

The indictment accurately charges all the statutory elements of the offense, namely, that the accused rendered services before the department; that he received compensation therefor (naming the party to whom the services were rendered and from whom the compensation was received, the amount which he received, the time when he received it); and that the United States was interested in the matter in relation to which he rendered the services. For the purpose of informing the accused as to the nature and character of the matter in question, the pleader undertook to state what was pending before the Post-Office Department in relation to which the accused rendered the services. The sole purpose of this statement was to fairly and reasonably inform the accused of the general nature of the matter; and for this purpose,

as was conceded in argument, no such particularity of averment is required as would have been necessary if a criminal charge was being laid against the securities company. It is entirely sufficient if the averments fairly serve the purpose of informing the accused of the general nature of the matter which was pending before the department, in regard to which he is charged with having rendered service.

But a conclusive answer to this first criticism is that the indictment, after alleging that the inquiry before the department was whether the securities company had violated section 5480, Rev. St., charges that the matter so pending before the department was "to the end and for the purpose of enabling the Postmaster General of the United States, in pursuance of the authority vested in him by law, to ascertain, find, and determine from evidence satisfactory to him whether he should order and direct the postmaster at St. Louis not to deliver to the said Rialto Grain & Securities Company, but to return with the word 'Fraudulent' plainly written or stamped upon the outside, * * * any and all letters addressed to said Rialto Grain & Securities Company, and sent to or through the post office at St. Louis, Missouri, by means of the post-office establishment of the United States." All other averments, in my opinion, might be treated as surplusage. Those just quoted would in and of themselves sufficiently apprise the accused of the matter pending before the department. It cannot be successfully claimed, I think, that the Postmaster General did not have jurisdiction and ample authority under section 3929, Rev. St., as amended, to forbid the use of the mails by the securities company, and to issue the so-called "fraud order," under some circumstances. If he had such jurisdiction in the abstract—that is, if he could have exercised the jurisdiction of forbidding the use of the mails to the securities company under any circumstances—such was jurisdiction enough for the purposes of this case. I know of no reasons why, in this incidental feature of the indictment, the pleader should be called upon to state accurately all the facts necessary to give jurisdiction to the Postmaster General. The law (section 3929) conferred the jurisdiction just referred to upon the Postmaster General, and of this law the courts take full cognizance. I think the pleader might properly enough have omitted all else in the indictment on the subject now discussed except that portion above quoted, and the necessary jurisdiction in the Postmaster General would have sufficiently appeared. Certainly, no injury can befall the accused by reason of the unnecessary detail of evidential facts. This tends to apprise him more fully than the law requires of the nature of the matter pending before the department.

The next question is whether the inquiry provided for by section 3929 of the Revised Statutes, namely, whether any person is engaged in conducting a fraudulent scheme or device by means of the post-office establishment is "a matter or thing" concerning which a senator of the United States is precluded from rendering services for a pecuniary compensation, within the true meaning of section 1782. The prohibition of the statute is against rendering any service to any person "in relation to any proceeding, contract, claim, controversy, charge, accusation, arrest or other matter or thing in which the United States is a party or directly or indirectly interested before any depart-

ment, court-martial, bureau, officer, or any civil, military or naval commissioner whatever." It is first contended by counsel for the accused that the words "other matter or thing" found in the enumeration cannot enlarge the particular specification which precedes it. The rule "ejusdem generis" is invoked, to the effect that, when such general words follow particularly specified subjects in a statute, the general words must be construed as not enlarging the particulars enumerated, and as not creating any new subject differing from those specified. This, generally speaking, is a well-recognized rule of construction, but clearly does not go to the extent of altogether nullifying the general words. Its true meaning is that the general words must be construed as comprehending and embracing other subjects like those specified; that is, of the same general character, or so related to them as to be within the legislative intention. Effect must be given to all words of a statute, if possible. Congress, therefore, must be held to have intended something by the use of these general words. Now what is it?

Congress industriously specified the several subjects just mentioned, obviously intending to cover any and all matters or things that might be the subject of inquiry before a department in which the United States should be interested. The statute in the language employed embraces the actual "proceeding," "controversy," "charge," "accusation," or "arrest" in which the United States might in any technical sense be a party. It then adds the words "contract" and "claim," manifestly embracing the matters in which the United States might be interested pecuniarily. Congress then, doubtless realizing that in the several executive departments and bureaus of the government divers other matters might properly and necessarily be the subject of consideration and investigation, made use of the other general words "or other matter or thing." I think these words, within the true meaning of the rule of construction known as "ejusdem generis," were intended to cover kindred subjects, like preliminary examinations and inquiries necessary to enable the government acting through one of its departments, bureaus, officers, etc., to determine whether a proceeding should be instituted, a charge or accusation made, or an arrest ordered, or whether a contract or claim should be made. All of these things are obviously important in the conduct of the great executive departments and bureaus of the government, and it is with reference to these executive departments and bureaus that the provisions in question appear. The chief functions of these departments and bureaus are to investigate, determine, and act, and not to sit as courts in the matter of actual arrests, accusations, or controversies in the legal sense. I think, in the light of the foregoing considerations, that the general words "or other matter or thing" fairly embrace the inquiry or investigation alleged in the indictment to have been pending in the Post-Office Department. This conclusion, it seems to me, is eminently correct, so far as the particular charge laid in the present indictment goes. The Postmaster General is alleged to have been engaged in making an inquiry as to whether the securities company should be forbidden the use of the mails. This inquiry was quasi judicial in its character. It could be followed by an order depriving the securities company of the valuable privilege of using the mails. Such an inquiry involves many of the

essential characteristics of a "proceeding" or "accusation"; at least, in my opinion, enough to make it so akin to or so like the "proceeding" or "accusation" of the statute as to be fairly comprehended by the general words under consideration.

It is next argued that, even if the inquiry before the Postmaster General in question was within the contemplation of the statute, the United States is not directly or indirectly interested in it, and therefore that the accused is guilty of no offense within the meaning of section 1782, Rev. St. [U. S. Comp. St. 1901, p. 1212], even if he did receive compensation for services rendered to the securities company before the department in the matter under investigation. It is true, as argued by counsel, that the statute in question carries a limitation. The matter or thing involved must be one "in which the United States is a party, or directly or indirectly interested." It is not averred in the indictment that the United States was a party to the proceeding in question, but that it was directly, and in the second count indirectly, interested. Counsel have called attention to several cases in the United States Supreme Court and in state courts of last resort in which the words "interest" and "interested" are found in statutes relating to disqualification of parties, witnesses, and judges in legal proceedings—that is, suits pending in the courts—and to cases involving the right of appeal in suits in which the state is interested as a party or otherwise. In these cases it has been held generally that the "interest" referred to must be a pecuniary or property interest, and counsel for the accused contend that the interest of the United States contemplated by section 1782 is only that kind of an interest, namely, a pecuniary or property interest, and that the matter or thing pending before the department within the purview of that section must be one in the determination of which the United States may gain or lose something of value. These cases involve statutes relating generally to suits or actions at law wherein property or property rights are involved. The witnesses and judges whose "interest" in the matter was made a disqualification were such as had no other duty to discharge in the cases except, so far as the witnesses were concerned, to testify, and, so far as the judges were concerned, to render judgments and pass upon rights of property or other valuable rights, which afforded the subject of the particular litigation in hand. The Legislatures which enacted the statutes construed in those cases obviously had primarily in view the narrow sphere of the subject of litigation, which, of course, was property—the vindication of individual right, or the redress of individual wrong. The legislative vision need not and did not extend beyond the effect of the pecuniary interest of the witnesses or judges in the individual cases. Is this the measure of duty or obligation of the United States in the matter of inquiries or investigations pending before its executive departments or bureaus? I think not. The United States, in effect, agreed with the states, and with the people of the states, by the adoption of the Constitution, and the acceptance of the powers delegated to it by the states, that it would, among many other grave responsibilities represented by delegated powers, establish post offices and post roads, and it agreed that it would pass any and all laws requisite and necessary to make that grant of power effectual. Pursuant thereto, it, by its Congress, has

passed many laws regulating the mail service, prohibiting its use for fraudulent purposes and punishing offenders. The Constitution, and the laws of the United States made pursuant thereto, is the supreme law of the land. The President is the chief executive officer. The Constitution ordains that he "shall take care that the laws be faithfully executed," and requires that he shall take a solemn oath to faithfully discharge this obligation. Numerous departments, which are but an arm of the President for the performance of his executive duties, have been organized to aid him in the discharge of these duties. It follows from these considerations that in the performance of these duties the executive department is but fulfilling the high obligation imposed upon it by law. These duties, including that of executing the law, are duties which the government owes, not as a moral obligation resting alike upon all the citizens of the republic, but are duties imposed upon its executive officers and departments by law, and which, under the highest and most solemn obligations, they must perform. Madison, in one of his famous papers on the Constitution, says: "The federal and state governments are in fact but different agents and trustees of the people, instituted with different powers, and designed for different purposes." In my opinion, the government of the United States is interested in the matters of inquiry and investigation pending before its executive departments, looking towards the enforcement of its laws, in a higher measure of legal obligation than an ordinary agent is bound, by the contract between him and his principal, to perform his duties. No one would question for a moment that such an agent would be interested, even in a pecuniary sense, in the performance of his duty. For failure to do it legal liability might accrue against him.

I regret that industrious counsel have not been able to call my attention to any adjudication of any court on the direct question now under consideration. So far as I know, the particular feature of section 1782, now under consideration, has never been adjudicated by any court of the United States. In the absence of the aid of any prior adjudication, I have now given the statute in question such interpretation as its language, taken in connection with the obligations imposed by the Constitution and laws upon the executive department of the United States, seem to me to require.

It follows that, in my opinion, the United States can be and is interested as charged in the indictment in the matter alleged to have been pending before the Post-Office Department. I think the same conclusion would follow if heed should be given to the ordinary and natural meaning of the word "interested." Its primary meaning is "to be concerned in a cause or its consequences," and this meaning is the one which ordinarily should be given to legislative enactments.

The demurrer to the indictment must be overruled.